

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
          iPhone )
Seized as FP&F No. 2026565400015101 )
         ("Target Device ") )

Case No.    25mj6083

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U. S. C. § 1324 | Alien Smuggling |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Carlos L. Glover II, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Carlos L. Glover II, U.S. Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 11/06/2025 _____

_____
*Judge's signature*

City and state:  San Diego, California

HON. BARBARA LYNN MAJOR , U.S. Magistrate Judge
*Printed name and title*

1

# **ATTACHMENT A**

2

## PROPERTY TO BE SEARCHED

3    The following property is to be searched:

4    iPhone
     Seized as FP&F No. 2026565400015101
5    ("Target Device")

6    **Target Device** is currently in the custody of the Department of Homeland Security,
     Customs and Border Protection, United States Border Patrol, San Diego Sector.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **October 14, 2025, through October 28, 2025**:

    a.   tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

    b.   tending to identify accounts, facilities, storage Device, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.   tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.   tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.

1

## AFFIDAVIT

2

I, Carlos Glover II, being duly sworn, hereby state as follows:

3

## INTRODUCTION

4

1.     I submit this affidavit in support of an application for a warrant to search the following electronic devices:

5

6

iPhone
Seized as FP&F No. 2026565400015101
("Target Device")

7

8

The **Target Device**, as further described in Attachment A and to seize evidence of a crime,

9

specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as

further described in Attachment B.

10

2.     The requested warrant related to the investigation and prosecution of

11

defendant, Alfonso RAMOS Beltran, for transporting and moving an illegal alien within

12

the United States. The **Target Device** is currently in the custody of Department of

Homeland Security, Customs and Border Protection, United States Border Patrol, San

13

Diego Sector.

14

3.     The facts set forth in this affidavit are based upon my personal observations,

15

my training and experience, and information obtained from various law enforcement

personnel and witnesses, including my review of reports prepared by other law

16

enforcement officers and agents. This affidavit is intended to show that there is sufficient

17

probable cause for the requested warrants and does not purport to set forth all of my

18

knowledge of the investigation into this matter.   Dates and times are approximate.

19

20

21

1

**1**

## TRAINING AND EXPERIENCE

**2**

4.      I have been employed by the USBP since 2021 and am currently assigned to

**3**

the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy

at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal

**4**

Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of

**5**

Criminal Procedure and have been a Federal Law Enforcement Officer for 4 years.  I am

**6**

authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for

search and seizure warrants and serve arrest warrants.  I have experience and have received

**7**

training with respect to conducting investigations of immigration and criminal violations

**8**

of Titles 8, 18, 19, and 21 of the United States Code.

5.      My current duties involve the preparation of criminal and administrative cases

**9**

for prosecution, including the use of linking related subjects and information via electronic

**10**

equipment and telephones. In the course of my duties, I investigate and prepare for

**11**

prosecution cases against persons involved in the inducement, transportation, and

harboring of illegal aliens into and within the United States; and, the utilization of illegally-

**12**

obtained, counterfeit, altered or genuine immigration documents by illegal aliens to

**13**

illegally gain entry or remain in the United States.

6.      During my tenure as a Border Patrol Agent, I have participated in the

**14**

investigation of a number of cases involving the smuggling of aliens from Mexico into the

**15**

United States and transportation of illegal aliens within the United States, which have

**16**

resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the

indictments of persons for alien smuggling, including drivers, passengers, and guides.

**17**

7.      Through the course of my training, investigations, and conversations with

**18**

other law enforcement personnel, I have gained a working knowledge of the operational

**19**

habits of alien smugglers and alien transporters, in particular those who attempt to smuggle

aliens into the United States from Mexico and transport them throughout the Southern

**20**

District of California.  I am aware that it is a common practice for alien smugglers to work

**21**

1    in concert with other individuals and to do so by utilizing cellular telephones to maintain
2    communications with co-conspirators and/or illegal aliens in order to further their criminal
3    activities. Because they are mobile, the use of cellular telephones permits alien smugglers
     and transporters to easily carry out various tasks related to their smuggling activities,
4    including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,
5    providing instructions to transporters, guiding aliens to specific pick up locations, warning
6    accomplices about law enforcement activity in the area and the status of check-point
     operations, and communicating with co-conspirators who guide aliens, coordinate drop off
7    locations, and/or operate alien stash houses.

8            8.     The smuggling of aliens generates many types of evidence, including, but not
     limited to, cellular phone-related evidence such as voicemail messages referring to the
9    arrangements of travel, names, photographs, text messaging (via SMS or other
10   applications), and phone numbers of co-conspirators and illegal aliens. For example,
     drivers and passengers responsible for transporting illegal aliens are typically in telephonic
11   contact with co-conspirators immediately prior to and/or following the crossing of the
12   illegal aliens at the border, at which time they receive instructions, including where to pick-
13   up the illegal aliens for transportation into the United States and where to take the illegal
14   aliens after crossing into the United States. These communications may also include
     locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in
15   telephonic contact with co-conspirators prior to and following their crossing in order to
16   make smuggling arrangements, receive instructions, and report their locations after
17   crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to
     months in advance of an event to recruit drivers and to coordinate the event. It is also
18   common for co-conspirators to continue to contact each other by phone calls, social media,
19   or messaging applications when contact is lost with the driver after an apprehension has
20   occurred.

21

3

9.     Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

> a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;
>
> b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;
>
> c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;
>
> d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;
>
> e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

**1**

      f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**2**

**3**

      g.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**4**

**5**

## FACTS SUPPORTING PROBABLE CAUSE

**6**

**7**

    11.   On October 28, 2025, Border Patrol Agent (BPA) J. Valencia was conducting assigned duties in the Chula Vista Border Patrol Station area of operation. BPA Valencia was in full Border Parol uniform with badge and insignia visible.

**8**

**9**

    12.   At approximately 2:20 AM, BPA M. Ponce advised over service radio of a

**10**

vehicle driving cautiously along Paseo De La Fuente heading towards an area known to Border Patrol Agents as "Twin Buildings". BPA E. Gomez responded and advised that the

**11**

vehicle identified as a dark colored BMW had parked behind a building. Moments later the

**12**

BMW began to leave the area and Supervisory Border Patrol Agent (SBPA) R. Ceja

**13**

attempted to get behind the BMW and conduct a vehicle stop. The BMW accelerated rapidly out of the area.

**14**

    13.   At approximately 2:35 AM, BPA A. Rodriguez advised that the same BMW

**15**

was back in the area on Paseo De La Fuente and Otay Mesa Road. BPA Rodriguez drove

**16**

along side of the BMW in an attempt to broadcast the BMW's license plate. At this time

**17**

SBPA Ceja responded and was now positioned behind the vehicle. The BMW abruptly stopped which made BPA Rodrguez drive past the BMW. SBPA Ceja then observed an

**18**

individual dressed in all black run out of brush and enter the BMW through the front

**19**

passenger door. BPA Rodriguez had maneuvered in front of the vehicle attempting to pull over. The BMW quickly accelerated and struck the front passenger side of BPA Rodriguez'

**20**

vehicle. SBPA Ceja instantly activated his emergency lights and siren as the BMW sped

**21**

westbound on Otay Mesa Road. The BMW failed to yield driving recklessly through red lights and construction. BPA Valencia then responded and attempted to catch up to the BMW. Agents advised that the BMW drove north on the 805 FWY. The BMW then drove westbound on State Route 94 towards downtown San Diego. Minutes later Agents advised that the BMW was traveling eastbound on SR-94. At approximately 2:55 AM, Agents advised that the BMW exited Kelton Street and crashed into an embankment.

14.    At approximately 3:00 AM, BPA Valencia arrived on scene and observed the BMW flipped over. He then observed the driver of the vehicle later identified as defendant Alfonso RAMOS- Beltran exit the driver door and was detained. At approximately 3:12 AM, Emergency Medical Services (EMS) arrived and evaluated RAMOS. EMS advised that RAMOS would be taken to the hospital to be further evaluated for possible injuries. BPA Valencia followed EMS to Scripps Mercy hospital where he conducted an immigration inspection. RAMOS stated that he is a citizen of Mexico and at approximately 4:30 AM, BPA Valencia placed RAMOS under arrest.

15. On October 29, 2025, Border Patrol Agent I. Urbina Jr. was dressed in full rough duty uniform with badges and insignia fully visible. At approximately 10:10 AM, Agent Urbina approached K.V. in Scripps Mercy Hospital - Hillcrest and conducted an immigration inspection. K.V. stated that he was born in Mexico and is a citizen of Mexico. K.V. admitted that he does not possess any immigration documents that would allow him to enter or remain in the United States legally. This was the most opportune time to conduct the interview as K.V. had been assessed by medical personnel and was coherent. At approximately 10:11 AM, Agent Urbina placed K.V. under arrest.

16.    At the time of arrest, the **Target Device** was found on RAMOS's person. The **Target Device** was subsequently seized.

17.    Based upon my experience and training, consultation with other law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names,

6

1   electronic mail (email) addresses, appointment dates, messages, pictures, and other digital

2   information are stored in the memory of the Target Devices. In light of the above facts and

    my experience and training, there is probable cause to believe that the material witnesses

3   were using the Target Devices to communicate with others to further illegal entry into the

4   United States.  Based on my training and experience, it is also not unusual for individuals,

5   such as the defendant, to attempt to minimize the amount of time they were involved in

    their smuggling activities, and for the individuals to be involved for weeks and months

6   longer than they claim.  Accordingly, I request permission to search the **Target Device** for

7   data beginning on **October 14, 2025, through October 28, 2025.**

8                                   **METHODOLOGY**

9            18.    It is not possible to determine, merely by knowing the cellular telephone's

    make, model and serial number, the nature and types of services to which the devices are

10  subscribed, and the nature of the data stored on the devices. Cellular devices today can be

11  simple cellular telephones and text message devices, can include cameras, can serve as

    personal digital assistants and have functions such as calendars and full address books and

12  can be mini-computers allowing for electronic mail services, web services and rudimentary

13  word processing. An increasing number of cellular service providers now allow for their

14  subscribers to access their device over the internet and remotely destroy all of the data

    contained on the device. For that reason, the device may only be powered in a secure

15  environment or, if possible, started in "flight mode" which disables access to the network.

16  Unlike typical computers, many cellular telephones do not have hard drives or hard drive

17  equivalents and store information in volatile memory within the device or in memory cards

    inserted into the device. Current technology provides some solutions for acquiring some of

18  the data stored in some cellular telephone models using forensic hardware and software.

19  Even if some of the stored information on the device may be acquired forensically, not all

20  of the data subject to seizure may be so acquired. For devices that are not subject to forensic

21  data acquisition or that have potentially relevant data stored that is not subject to such

                                         7

acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19.     Following the issuance of these warrants, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

20.     Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21.     Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

## CONCLUSION

22.     Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of an alien smuggling violation of Title 8, United States Code, Sections 1324.

23.     Because the **Target Device** was seized at the time of defendant and material witness' arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **October 14, 2025, through October 28, 2025.**

8

1       24.   Accordingly, I request that the Court issue warrants authorizing law

2   enforcement to search the item described in Attachment A and to seize the items listed in

   Attachment B using the above-described methodology.

3

4   I swear the foregoing is true and correct to the best of my knowledge and belief.

5

6

7                         Carlos L. Glover II
                      Border Patrol Agent

8   Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P.

9   4.1 by telephone on this **6th** day of November 2025.

10

11

12                         HON. BARBARA L. MAJOR
                      United States Magistrate Judge

13

14

15

16

17

18

19

20

21

9

1

**ATTACHMENT A**

PROPERTY TO BE SEARCHED

2

3 | The following property is to be searched:

4 | iPhone
Seized as FP&F No. 2026565400015101
5 | ("Target Device")

6 | **Target Device** is currently in the custody of the Department of Homeland Security,
Customs and Border Protection, United States Border Patrol, San Diego Sector.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **October 14, 2025, through October 28, 2025**:

a.    tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b.    tending to identify accounts, facilities, storage Device, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.